is 23-3286 Li v. Fresenius Kabi. Good morning, Your Honors. Good morning. Just one second. I want to make sure we Good morning, Ms. Akins and Ms. Cantrell. Can you hear me okay? Yes, Your Honor. I can hear you. All right. Ms. Akins, whenever you are ready. Thank you, Your Honor, and may it please the court. My name is Carla Akins on behalf of the appellant who is the plaintiff in this matter, Ms. Li. I am requesting that the court basically reinstate the case because there were numerous questions of fact at the very least. I think the evidence was overwhelming with respect to the fact that the company did not seek to accommodate Ms. Li, that she worked there without issue for basically five years. How could they? How could they accommodate her? You never explained that. At least I don't see any explanation of how they could have accommodated her anywhere in the district court or in our court. How could they have accommodated her? Well, So, she was asking them what kinds of... She sent them her notes. They met with her and then they demoted her. So, they did understand at least that because they put her in a job that she was able to do for a temporary period of time, which involved lab work. So, they could have accommodated her by changing her job? Is that the argument? They did change her job. Yes, that's one of them. Okay. Does the law require that as a reasonable accommodation? If you can't do this job, we're required to give you a different job as a reasonable accommodation? If they can, unless it presents some type of hardship to the... And I don't want to miscite the language, but unless it presents some type of hardship to the company in some way that they could say that they couldn't accommodate her, then fine. But with respect to, I think, Mr. Davis, there's really not anywhere else you need to look in the record other than a few pages in Mr. Davis's take that to his logical conclusion if you're a truck driver. And a truck driver says, I can no longer do my job as a truck driver because I can't use my right foot. Let's say I can't drive a truck anymore. But there's this other position that's open and it's an office position. And as a reasonable accommodation, you must put me in the office because I can do that job and the job is open and that's a reasonable request. And your argument is that the law requires the truck driver now to have a desk job? If it's a reasonable accommodation, then I guess I'd state that it would. In this case, we're talking about scientist to scientist in job duties she was already doing. So I just want to be very clear about that. That's why we make such a big deal about the distinction between lab work and bench work because the promotion, she requested the promotion, so the defendant received the benefit of her services until she finished the project pretty much right up until the end for three years. And then at that point, she asked for a promotion. Somebody else was promoted over her who had less experience than her. They had no experience in the job at all. And she had over 15 years by the time she even started the job at the age of 51. So at the time she was there, she was already doing this type of lab work. I want to be very clear about that. When she asked for the promotion, it's basically to do peer reviews. She did ask to be able to, Mrs. Page cited correctly, 184 to 1 90. She talks about that. So she's talking about asking them about other things that she could do, asking them to be to train her on doing the peer reviews in which they just flat her manager. Mr Weber just flatly denied denied her that ability. And so you're talking about a there were some performance issues and she never got the promotion, correct? We dispute that there were any performance issues. So they actually gave her a bonus. This is all within a month. And so that's the issue, the timing, which under louder milk is a question of fact. So at the point that she's asked for an accommodation, they're going through these things that she might be able to do. Then all of a sudden now they say that there's a problem. So there's a question of fact there because they say, you know, we had a problem with her reports. And then Mr Land, who's the same one who said he wasn't promoting her, um, is the one who says, well, everybody has modification to report. Doesn't mean that there's a problem. And if there was such a problem, then why would you give her a performance bonus at the same time? Again, in the same month, you give her a performance bonus based on the work she's been doing for the last three years. It doesn't make any sense. And it's literally not until she gets demoted as she called it. And that's page range. I'm talking about. That's where she discusses this. She calls it demotion. The bonus was given before they reviewed the report and the report was deemed insufficient and substantial changes were made to it before it was submitted. So what impact should that have? Go ahead, I'm sorry I couldn't hear you. What impact should that have on the analysis? I think if we're getting into the facts, they might be saying that, but I don't believe that that's how this actually occurred. But you don't dispute it. I certainly didn't see it in the documents in the briefing that the report that was submitted to the FDA had to be substantially revised from what she initially turned in. That's a standard thing that happens. That didn't mean she did something wrong. And that's where the dispute comes in because the employers try and say, and that's in our statement of facts. I want to make sure I cite it correctly. He states that's where they talked about her deviations and they said defendant says that Mr. Land said this, but if you actually read what he said, he said that most modifications to reports are normal. That's from him, his actual testimony. He does what they've said he said and what he actually said, which happened a few times, were not the same thing. And so that's where the dispute comes in because he's saying that everyone has to do modifications. That's normal. So that's again, if that's what the issue is. And I think that comes down to a question of fact that they created because he's saying that that's what happened. That doesn't mean just because there were modifications doesn't mean she didn't do her job correctly. And there hasn't been anything that anybody shown in writing to say that these are the problems that you had. I mean, these are people, the same people who are saying this are the same people who did these actions. So I would think that we would at least, you know, under a cat's eye, say that it's the same. I mean, it's the same actors. I don't, there's no separation there. And I haven't seen any evidence to the contrary to say otherwise. So, but they didn't fire her. They didn't actually demote her. They said they, what they called themselves doing was giving her a different job. And then the job didn't require the bench work. And the trial court made a determination with respect to bench work that there, that was an essential job function, which again, under Seventh Circuit precedent, Brown versus Smith, that's a question of fact as to whether it was essential. Obviously she was able to do certain job duties there and they did have her doing them during the time she requested the accommodation. And then suddenly she couldn't work anymore. She wasn't allowed to even do the job that she had been doing. So there's several parts to this. They still have to engage in the interactive process. Nobody did. There's Mr. Davis's testimony. I want to make sure I cite that correctly. On pages 21 to 23 of his, of his deposition transcript, he says flatly, we fired her because she couldn't do bench work, period. So there wasn't anything about you didn't do your reports correctly. You weren't handling your job, said you could not do bench work. That's the reason. And he was very unequivocal about that. So at that point, if the determination of what essential function is, is a question of fact, and you're saying that that was an essential function and that's why you fired her, not for any of these other reasons about the FDA reports and all those other things. I think that's respectfully background noise because I don't think they are not saying that that's the reason that she was terminated. They were pleased to keep her. If they want to say that's the reason they didn't promote her, that's a separate issue. But that doesn't mean that that's the reason she was terminated. That's a separate thing. And respectfully, we have a dispute with respect to whether or not she actually was not performing. No one, they still used her work. And she had other things that she had done. No one explained any of these things to her. She's hearing this now, you know, from during this trial proceedings as to why they weren't giving her this promotion, what it was she did. She's telling them and she had all of her things, her ducks in a row where she presented evidence to show that she had overperformed, that she had more experience than this person. And none of that was explained. They just didn't promote her. So again, these things are coming after the fact. And I think with respect to the timing there, that that would at least raise a question of fact. I think that's why the Seventh Circuit has held that it is a question of fact, because an employer could come in here and say anything. But if they don't tell the employee that, then why would they be given the benefit of the doubt? The issue of pretext is a matter of fact, a question of fact as well. It's not for, in louder, they talk about the the jury being able to determine the sufficiency of even an inference. That means if you present enough evidence to survive and say that there was pretext here, then the court has to consider that and allow it to proceed to a jury to determine what you have submitted as pretext is actually enough to present a question, excuse me, enough to rule the day for you in a trial. I don't think that it was for the trial court to get involved here, where in five pages of deposition transcripts between two major witnesses, the HR manager and my client, we were able to determine exactly that there was no accommodation offered and that she was terminated because of what they called her inability to perform the essential functions of her job and no other reason. Ms. Higgins, can I clarify something please? Your briefing doesn't make any reference to the district court's ruling on your motion to reconsider the right to sue letter. So I assume you are not appealing anything with respect to the district court's ruling on the motion to reconsider. Is that fair? So the, you mean to the extent that we included the right to sue letter in the reconsideration and not prior in the response to summary judgment? Yes, the district court's ruling on the reconsideration only. You have not challenged that ruling in any way in your briefing. So I just want to clarify, you don't think you're appealing that? Well, our first issue is that the matter of exhaustion is, was, it should have been settled because she had a right to sue. So I'm not sure. I want to be clear that to the extent that if that's what you're suggesting. You challenged the district court's initial ruling on that, but there's nothing challenging the district court's motion to reconsider when it would not consider the right to sue letters you submitted. Okay, I mean, I, my argument here is that they should have considered them. I don't, it's not a jurisdictional matter. It's a matter of, that's an affirmative defense if they want to say it, but they obviously, these documents existed. I don't think that we had to attach them to our pleading. Jurisdictional is different than preserving issues for appeal. You just don't make any arguments about the district court not considering those Well, the only thing I can say is that I am arguing that the letters existed and should have been considered. If I did not specifically state, I don't think it was waived. I'm stating that the, she did exhaust with respect. The argument is that she did exhaust with respect to those, to those letters and that those are not, there was no failure to exhaust. I think the issue is of the existence of the condition, not that I had to attach letters, right, to sue letters in order to be able to say, like, did I have the right? Yes, we did. And the district court should have considered that. So I don't, I don't believe that that was waived to the extent that that's what you're, that you're, you're asking me. And I apologize if I, if I wasn't clear on that. Do you want to reserve the rest of your time for rebuttal? Yes, I would. Thank you. Thank you. Ms. Cantrell. Good morning, your honors. My name is Stephanie Cantrell. I represent the and stop the clock if you would. We can barely hear you. I don't know if it's on your end or our end. Just one second. Our tech gurus are seeing if they can figure it out. Say something again. It sounded like you made one up. Good morning. Stephanie Cantrell for defendant Eppley. Kind of the same. Not better. Can you turn up anything on your end? Because we have everything up to the max. I switched my microphone. Is that any better? Yes, that's better. Thank you. Okay, we'll start the clock again and go ahead. I apologize. We did test this earlier in the week, but you never know what happens the day of, I guess. So, your honor, I guess what I would like to first address for the court is this issue of interactive process. Council made several comments that there was no interactive process and that it was the defendant's burden. First of all, we reject the notion that it's solely the defendant's burden to engage in an interactive process. But moreover, there's ample evidence in the record that an interactive process was held with Ms. Lee from the moment that she indicated that she had disability issues that needed to be addressed. So, we dispute that. We think there's ample evidence in the record. I'm happy to address those issues further. But I think the other important point that I'd like to note is that we believe that plaintiff is combining multiple issues in order to try to create a factual dispute. We heard counsel state earlier that there was no accommodation, but yet she was demoted and we called it an accommodation. Either she was accommodated by allowing her to do something outside her job or she wasn't. And so, I think to claim that the accommodations that were given to her were actually a demotion is nothing more than an attempt to try to show a factual dispute when there really is none. The facts are actually pretty straightforward in this case. And I won't go into too much detail. I know we have them in the record. But from our perspective, yes, we acknowledge the fact that plaintiff was an experienced scientist. That's why she was hired. She worked very hard. She was acknowledged that she was working hard by giving her a bonus. And we saw that she was working diligently on the project commonly known as the Vassal Preston Project. None of those facts are true. The problem was when her report came out, it was insufficient. And suddenly, the company realized that what they perceived to be hard work was not reflective in her report. And counsel makes some references to some deposition testimony in which one of the supervisors said, reports need to be revised all the time. That's true. But the main goals of submitting it for FDA approval were not met. And it wasn't minor revisions that needed to be made to the report. The entire report needed to be redone. And all of that doesn't really have anything to do, counsel is correct, none of that has anything to do with the reasons for her termination. It is the reason that she wasn't promoted. So that's why that was addressed in the factual section. That's our position. And again, well supported by the documents in the case. There are really four complaints that were alleged by the plaintiff. The national origin and age claims as already, judges, as you already pointed out, were dismissed for failure to exhaust. Disability and retaliation, the district court believed those also may have been, should probably should have been dismissed for failure to exhaust as well. But we didn't make that argument. We were aware of the fact that there was an EOC charge filed on those issues. So we argued that on the merits. And the court dismissed those on the merits. The issue throughout the courts, the lower courts opinion was consistent for all four of her claims, national origin, age, disability and retaliation. In each case, whether it was for failure to exhaust or whether it was for failure to exhaust, the court found that there was no factual evidence in the record that could lead to a denial of a summary judgment motion. Plaintiff has a number of arguments, suppositions, beliefs, theories, conclusions. There's no evidence in the record. And the district court was very clear about that in both their initial order granting summary judgment and their denial of summary judgment motion. The court found strongly that the evidence that we put into the record supports the fact that, number one, Ms. Lee was accommodated by the defendant for over seven months. She was, she brought her restrictions to the company in August of 2019. She was immediately referred to as employee assistance. She was referred to employee benefits coordinator. She was given time off under FMLA. She was given the ability to apply for short-term disability. She was given accommodations for her lifting restrictions. She said she couldn't do bench work, so no bench work was allowed. To now call those demotions is disingenuous. Those are accommodations. And she was accommodated for her restrictions for over seven months. The company worked with her to help her apply for short-term disability. Initially, she didn't provide the necessary medical records. They worked with her again in September of 2019. Finally, she was approved for short-term disability in November of 2019. She remained on short-term disability until March. When her short-term disability expired in March of 2020, the company notified her and said, let us know of your standing. Are you able to return to your position as a senior scientist who works in the lab? She was not. But she said she had another appointment coming up. So they extended her leave. They protected her job for another month until April of 2020. Again, she was unable to perform the essential functions of her job. And that's what's key here. It's not a matter. We're not trying to parse facts about lab work versus bench work. As a senior scientist, scientists work in the lab. They sit at a bench and they perform experiments. That was her job. She was given an opportunity to try to do other work. She was trained in January of 2020 on the peer review work. And it was not successful. There was testimony provided that the work that she did as a peer review expert was not sufficient, wasn't working. It wasn't something that she was good at. She's a good scientist, no question. But she was not able to perform her job. When she wasn't able to return in April, the company extended her leave again and gave her until May to try to return to her job. As of May, she was still unable to perform the essential functions of her job, which was to perform cell-based assay experiments. How do you respond to her argument that whether or not working in the lab was an essential part of the job is a question of fact and not something that can be determined on this In the job description, Your Honor, it quite clearly says that lab bench work is an essential function of the job. There was also testimony to support that by two of defendants' witnesses. I do think that lab slash bench is sort of used interchangeably. And not all scientists in all professions have to work in a lab. There are plenty of scientist positions where the scientist is never going to a lab. But at Fresenius County, that was an essential requirement of the job and is outlined in the job description. So again, we believe there's evidence in the record to show that A, she was accommodated. B, there was a reason that she was not promoted, and that was the failure of the vasopressin project. C, that she was accommodated for over seven months. And her termination, counsel is correct in the fact that her termination was not because of her failure of her job. And this court has held that an employee who is unable to perform their work for over a multi-month period of time is no longer given the protections under the ADA. Multi-month? Is that five months? Is that seven months? I don't know. But time and again, the company worked with her, extended her leave, and granted her additional time to be able to position. My understanding is that as of today, she still cannot perform bench work. And we're now four years later from the date of her initial injury. We don't believe that there's any evidence that there was a failure to accommodate or that she was discriminated against in any way because of her disability. And we believe the record supports that. If I may, I'd like to speak briefly with respect to the claims of national origin and age discrimination. As previously alluded to, the district court dismissed those cases for failure to exhaust. We did, however, address those in our response brief to the court in the interest of a de novo review. So with respect to national origin claims, the company is diverse. It has a diverse workforce. There's no evidence that Ms. Lee, being of Chinese descent, had any bearing on her inability to complete the vasopressin project successfully, nor did it have any bearing on her moreover, did not list any comparator employees that we believe were similarly situated to her in order to prove a prima facie case of national origin discrimination. She refers repeatedly to a woman named Mr. Raya. Mr. Raya is not similarly situated. She was a principal scientist, not a senior scientist. She had a position that was higher than the plaintiff. She did not have to lab as a principal scientist. So any comparisons to her we believe are unfounded. We don't believe that there's any evidence if the court would review the national origin claims, regardless of the failure to exhaust, that there was any kind of discrimination as to Ms. Lee based on her national origin. Both similar arguments go to her claims of age discrimination. However, as we've explained to the court in our briefing, age discrimination has a higher standard under Ms. Lee must show that age was the but for cause of her termination. And had she not been over the age of 40, she would not have lost her job. That flies in direct conflict to her claims of national origin discrimination and disability discrimination. And again, the company has been clear in the record that she was terminated because she could not return to the essential functions of her job. Her age again had no bearing on this case. Moreover, we do believe that there was a failure to exhaust on both of those claims. And specifically with respect to the age claim, that was not that we don't believe that's properly before the honorable court. It was not a part of the motion to consider. And therefore her claims on appeal have not been told. And we don't believe that that's a proper claim before this venue at this point. So for all those reasons, we believe that the evidence in the claims that there was no discrimination or retaliation. I'm sorry, I didn't address retaliation. I'll just real briefly mention it. We were aware that Ms. Lee filed an EEOC charge in November of 2019 with respect to disability. That's part of the reason that we didn't argue failure to exhaust at the district court level. We never did see a right to sue from the EEOC and we don't believe plaintiff received it until two years later in sometime in 2021. However, we were aware that a charge had been filed. Ms. Lee was not terminated from her employment until five months later from November until May. There's absolutely no causal connection between her EEOC charge and her adverse action. Yes, we admit there was a protected activity in November of 2019. We admit there was an adverse action in May of 2020. The problem with Ms. Lee's argument is there's no connection between the two. Instead, she was accommodated. She was granted multiple extensions of her leave and the company worked with her repeatedly to try to find work that she could do that would meet her accommodations, which were fairly restrictive and prohibited her from doing her job. So for that reason, we also believe that the retaliation claims fail and we further believe that the district court ruled properly and granted the defendant's motion for summary judgment. Thank you, Ms. Cantrell. Ms. Aikens, anything further? Yes, briefly, Your Honor. To respond to the last comment was when they said they provided the accommodation and I thought it was just the time off, but now they're saying they worked with her. These questions were asked by defense counsel at the deposition in the pages I mentioned. So going from 189 to 204 basically is where this discussion happens and she asked, did you give her the off-arrest breaks? Was there any modification to the job offered? And she said, no. There was no interactive process with respect to that job that she was doing. When they talk about the demotion, she says in her testimony that she refused to do it because it was more labor-intensive. So what they tried to give her was something that was going to require her to be on the bench more and she said, no. She also specifically said at page 204, that, excuse me, 189 and 204, that she was not, when she asked about doing peer review, they said, he said, no, she wasn't able to do that. Nobody did any evaluation and she vehemently denies that anybody said that she didn't do well at peer review. There was no one brought in to evaluate. Counsel asked her about that. So basically, interactive process requiring you to have some type of evaluation done of your job site to say, well, here's how these things can be done. And to Judge Kohler's point before, that they're, in terms of what would the accommodation be, that's the point of the interactive process so that you could identify a way in which she would be able to do her job. This comment about the main goals not being met was, is a question of fact. If that's really what they're saying is the reason for not promoting her related to the vast suppressant project, then that's a determination that a jury should make. I've not seen any evidence and we certainly don't agree that that was the case. Right. Also, 29 CFR 1601-28 just requires that a notice of right to sue had been received, which it was. Just to address Your Honor's question with respect to whether we were disputing that, in our first argument, the reason that I laid out that there to sue with respect to all of these, the charge, the letter after from the IDHR very clearly indicates all of the types of discrimination, age, national origin, disability, and retaliation were filed in November of 2019. So I would reject that. With respect to the diversity there, there are 75 people in her department were Indian. She was of Chinese descent and that's the nature of the accommodations that were given to other people of Indian descent that were not given to her. And for those reasons, I would just ask that the lower court be reversed. Thank you. Thank you, Mr. Eakins. Thanks to both counsel. The case will be taken under advisement. Thank you. The next case for oral